IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MAZCON, A KURTZ BROS. CO., LLC,** ) | |
| Plaintiff, ) | C.A. No. 1:19-CV-40 |
| ) | |
| vs. ) | |
| ) | |
| **BEG GROUP LLC, et al.,** ) | RE: ECF Nos. 49, 52, and 55 |
| Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Mazcon, a Kurtz Brothers Company ("Mazcon") alleges that Defendants BEG Group, LLC (BEG), Joseph Greco (Greco), Perry Burt (Burt), and James Elkin (Elkin) violated federal and state law by, among other things, infringing on Mazcon's trademark and misappropriating trade secrets. Mazcon sought injunctive relief. Following the grant of preliminary injunctive relief regarding the prosecution of two Petitions for Cancelation in the U.S. Patent and Trademark Office, the Court granted Mazcon leave to file an Amended Complaint. Mazcon's Amended Complaint added two new parties, Burt and Elkin, and alleged legal claims of trademark infringement, unfair competition, false advertising, and false marking. ECF No. 40.

**I.   Introduction**

Both Plaintiff Mazcon and Defendant BEG Group ("BEG") produce, market, and sell erosion control products registered with federal trademarks. Mazcon holds a trademark on SWITCH SOCK, part of its Diamond Sock product line. BEG holds the trademarks for THE BIG SWITCH and BIG SWITCH, part of its Switch family of products. SWITCH SOCK, THE

1

BIG SWITCH, and BIG SWITCH contain switch grass, as opposed to other materials, as their main fill material.

Each party brings multiple claims under federal and state law. Mazcon alleges that BEG Group and its officers, Greco, Burt, and Elkin engaged in false advertising, misappropriation of trade secrets, trademark infringement, and unfair competition. ECF No. 40. BEG Group and Greco make several counterclaims against Mazcon claiming false advertising, trademark infringement, false marking, and unfair competition. ECF No. 46.

Mazcon and BEG agree on few of the factual allegations underlying their conflicting claims. For example, Mazcon paints a picture of BEG as an interloping start-up company trying to trade on Mazcon's long-standing and hard-earned goodwill in the industry by introducing and advertising products deceptively similar to Mazcon's products.[1] Meanwhile, BEG portrays itself as an innovative competitor that threatens the market share of the older more-established company. After BEG rejected a buy-out offer from Mazcon, things turned hostile and, according to BEG, the present litigation is allegedly part of Mazcon's sinister and abusive strategy of retaliation to eliminate its smaller competitor.

All Defendants attack aspects of the amended complaint, but on differing fronts. Defendants BEG Group and Greco seek dismissal only of Count II (misappropriation of trade secrets). ECF No. 49. Defendants Burt and Elkin move that the entire Amended Complaint be dismissed for its failure to allege their personal involvement. ECF No. 52. In the alternative, Burt and Elkin request that this Court order Mazcon to file a more definite statement. Mazcon has

---

[1] According to Mazcon, it is an industry leader in the Eastern United States and it holds multiple patents on proprietary technologies in sediment control (ECF No. 40, ¶¶ 9-10) and BEG is a competitor in Ohio and Pennsylvania (*id*. at ¶ 11).

moved to dismiss seeking dismissal of all six of BEG Group's counterclaims. ECF No. 55. These motions are fully briefed and are ripe for disposition.

**II.     Standard of Review**

A motion to dismiss filed pursuant to Rule 12(b)(6) must be viewed in the light most favorable to the plaintiff and the complaint's well-pleaded allegations must be accepted as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

To survive a motion to dismiss, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 *citing* 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235–36 (3d ed. 2004). In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." *Smith v. Sullivan*, 2008 WL 482469, at *1 (D. Del. Feb. 19, 2008) *quoting Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234, *quoting Twombly*, 550 U.S. at 556 n.3.

The Third Circuit has expounded on the *Twombly/Iqbal* line of cases. To determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the court must follow three steps:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are

3

> well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 221 (3d Cir. 2011) *quoting Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

### III. Partial Motion to Dismiss filed by BEG and Greco

BEG and Mr. Greco seek dismissal of Count II, a misappropriation of trade secrets claim under the Pennsylvania Uniform Trade Secrets Act, 12 Pa.C.S. Chapter 53. They contend that this claim fails on its face because Mazcon had previously disclosed its "trade secret" to a third party, the Pennsylvania Department of Environmental Protection (DEP).

Mazcon claims BEG and Greco misappropriated its trade secrets under the Pennsylvania Uniform Trade Secrets Act. The state statute defines misappropriation of a trade secret as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express or implied consent." 12 Pa.C.S. § 5302. *See also Bessemer Sys. Fed. Credit Union v. Fiser Sols., LLC*, 2020 WL 3969381, at *22 (W.D. Pa. July 14, 2020). A trade secret is "information that: (a) the owner has taken reasonable means to keep secret; (b) derives independent economic value, actual or potential, from being kept secret; (c) is not readily ascertainable by proper means; and (d) others who cannot readily access it would obtain economic value from its disclosure or use." *Teva Pharm. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 675 (E.D. Pa. 2018). Whether information is considered a trade secret depends on six factors: (1) existence of knowledge of the information outside of the business, (2) extent of knowledge of the information within the business, (3) measures taken to protect the alleged

4

secret, (4) the information's value, (5) the amount of resources used in creating the information, and (6) the difficulty of legitimately acquiring or duplicating the information. *Garcia v. Vertical Screen, Inc*., 2020 WL 2615624, at *4 (E.D. Pa. May 20, 2020) *citing Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010). Although a complaint does not need to disclose the trade secrets to state a claim, "[i]t is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated." *Id. citing Mission Measurement Corp. v. Blackbaud, Inc*., 216 F.Supp. 3d 915, 921 (N.D. Ill. 2016).

Assuming, as the Court must, the truth of the allegations in the Amended Complaint, Mazcon states that in early 2017, two employees of the company developed Mazcon's Seam filler Technology[2]. ECF No. 40, ¶ 145. A patent application was filed for this technology on May 25, 2017. *Id*. at ¶ 146. Contemporaneous to filing the patent application, one of Mazcon's employee/inventors "had preliminary confidential discussion with the DEP regarding the Seam Filler Technology in association with an anticipated future request for alternative [best management practice] so that the DEP may eventually approve alternative [erosion and sediment] control [best management practices] with the Seam Filler Technology" *Id*. at ¶ 149.

BEG and Greco obtained access to this secret technology prior to September 27, 2018, the date details of the technology first became available to the public. *Id*. at ¶¶ 147, 150. Mazcon contends that BEG's actions in obtaining this technology constituted willful and malicious misappropriation of Mazcon's trade secrets. *Id*. at ¶ 162. The parties agree that this claim rises or

---

[2] This is proprietary technology summarized in the patent application titled as "Secondary Tubular Composite Filter Sock Seam Filling Device and Method of using the Same and Composite Filter Sock Assembly Incorporating a Seam Filling Device." *Id*. at ¶ 145. This Court will refer to this as "Seam Filler Technology."

falls on whether Mazcon maintained the Seam Filler Technology as a trade secret when this technology was accessed by BEG and Greco. This claim is sufficiently pled.

BEG and Greco assert that this claim fails because, by disclosing the technology to the Pennsylvania DEP, the information was no longer secret. *See, e.g.*, *Krafft v. Downey*, 68 A.3d 329, 337 (2013) *citing Highland Tank & Mfg. Co. v. PS Int'l, Inc*., 393 F. Supp. 2d 348, 355 (W.D. Pa. 2005) ("a trade secret revealed in an expired patent is no longer a secret"). As explained by the U.S. Supreme Court, once "an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984). But here, it is alleged that Mazcon's employee had "preliminary **confidential** discussions" with the DEP and the Court must accept the classified nature of that communication as true. *See, e.g.*, *123 Exteriors, Inc. v. N. Star Exteriors, LLC*, 2018 WL 3642221, at *2 (E.D. Pa. 218) (accepting existence of confidential agreement not to disclose trade secrets as true for purposes of motion to dismiss). This was not, as pleaded, a public disclosure of the Seam Filler Technology. On a motion to dismiss, the question is not whether a plaintiff will prevail at the end, but rather "whether the plaintiff is entitled to offer evidence in support of his or her claims." *Swope v. City of Pittsburgh*, 90 F. Supp. 3d 400, 405 (W.D. Pa. 2014) *citing Oatway v. Am. Int'l Grp., Inc.,* 325 F.3d 184, 187 (3d Cir. 2003). Thus, this claim survives the motion to dismiss and will proceed to the next stage of litigation.

BEG and Greco urge the Court to initiate that next stage of litigation – summary judgment – now. The Court declines to do so. These Defendants recite to the Court deposition testimony that provides factual background to Mazcon's disclosure to the DEP. For example, BEG and Greco contend that if the Court is inclined to construe the word "confidential" liberally,

6

then the Court should look to the deposition testimony of Mazcon's corporate designee, Mr. Zock, concerning the nature of the discussions at issue. Defendants quote his deposition and request that this Court convert the motion to dismiss into a motion for summary judgment. ECF No. 50. In opposition, Plaintiff makes further recitation to the deposition of Mr. Zock. ECF No. 57.

This Court will not convert the current partial motion to dismiss into a motion for summary judgment. When applying the Rule 56 standard, a district court must examine the record, as well as any reasonable inferences therefrom, in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). *See also* Fed.R.Civ.P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record…"). Here, there is no summary judgment record which would permit this Court to consider Defendants' motion as one seeking Rule 56 judgment.

### IV.   Motion to dismiss or for more definite statement filed by Burt and Elkin

Defendants Burt and Elkin move to dismiss or for a more definite statement.[3] ECF No.

---

[3] Rule 12(e) of the Federal Rules of Civil Procedure permits a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed.R.Civ.P. 12(e). Although motions for a more definite statement are generally disfavored, they should be granted if a pleading is "unintelligible" or "virtually impossible for the opposing party to craft a responsive pleading." *Morris v. Kesserling*, 2010 WL 4362630, at *1 (M.D. Pa. Oct. 27, 2010). "Rule 12(e) must be read in conjunction with Rule 8, which requires only a short and plain statement of the claim showing that the pleader is entitled to relief." *Pozarlik v. Camelback Assocs., Inc.*, 2011 WL 6003841, at *2 (M.D. Pa. Nov. 30, 2011). Moreover, "[a] party making a Rule 12(e) motion must 'point out the defects complained of and the details desired.'" *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 736 (D.N.J. 2008). *See also Country Classics at Morgan Hill Homeowners' Ass'n v. Country Classics at Morgan Hill*, 780 F. Supp. 2d 367, 371 (E.D.Pa. 2011). A Rule 12(e) motion should be granted "when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith,

7

51. They initially argue that the Amended Complaint fails to plead a request for relief against them in violation of Federal Rule of Civil Procedure 8(a)(3). These Defendants also argue that Mazcon makes no factual allegations as to their participation.

In opposition, Mazcon argues that the Amended Complaint identifies Burt as the treasurer of BEG and Elkin as BEG's secretary. *See* ECF No. 40, ¶¶ 16-17, 19-20. While the factual allegations against Burt and Elkin are sparse, it is Mazcon's failure to request relief against these two individuals that is flawed.

Section X of the Amended Complaint is Mazcon's "Prayer for Relief." ECF No. 40, page 50. This section begins by requesting the Court to enter judgment in favor of [Mazcon] and against BEG and Mr. Greco." *Id*. The specific relief requested is as follows:

- That BEG and Greco be "preliminarily and permanently enjoined";

- That BEG be ordered to remediate;

- That BEG be enjoined from manufacturing and selling certain products;

- That BEG and Greco be ordered to compensate Mazcon;

- That Mazcon be awarded costs and attorney's fees;

- That the Court find BEG and Greco to have engaged in misappropriation;

- That BEG be enjoined from manufacturing a product;

- That BEG and Greco pay monetary damages to Mazcon;

---

without prejudice to [itself]." *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 232-33 (D.N.J. 2003). "It is not the function of 12(e) to provide greater particularization of information alleged in the complaint or which presents a proper subject for discovery." *Lincoln Labs., Inc. v. Savage Labs., Inc.*, 26 F.R.D. 141, 142-43 (D. Del. 1960). Rather, "[t]he basis for granting such a motion is unintelligibility, not lack of detail." *See Wood & Locker, Inc. v. Doran & Assocs.*, 708 F. Supp. 684, 691 (W.D. Pa. 1989).

- That Mazcon be awarded exemplary damages and attorney's fees based on BEG and Greco's willful and malicious conduct;

- That the Court order the cancelation of trademark registrations; and

- That the Court award any other relief deemed just and proper.

*Id.* at pages 50-51.

Burt and Elkin are not mentioned. So, this prayer for relief is insufficient under Federal Rule of Civil Procedure 8(a)(3) as concerns these two Defendants. Rule 8(a)(3) requires that in order to state a claim for relief, a complaint must include "a demand for the relief sought." Here, Mazcon has failed to identify what relief is sought as against Burt and Elkins. *See MHA, LLC v. Siemens Healthcare Diagnostics, Inc.,* 2017 WL 123435, at *3 (D.N.J. 2017) (granting motion to dismiss because "Plaintiff has not identified which relief is sought as against which named Defendants."). The motion to dismiss by these Defendants will be granted.

The motion for a more definite statement will also be denied as "[t]he basis for granting such a motion is unintelligibility, not lack of detail." *See Wood & Locker, Inc. v. Doran & Assocs.*, 708 F. Supp. 684, 691 (W.D. Pa. 1989).

Mazcon will be allowed to further amend its complaint.[4]

### V.    Mazcon's Motion to Dismiss All Counterclaims

In their Answer, Defendants BEG and Greco raise six counterclaims against Mazcon.

---

[4] This should not be difficult. Rule 8(a)(3) "does not require a party to frame the demand for judgment according to a prescribed form or set of particular words; any concise statement identifying the remedies and the parties against whom relief is sought will be sufficient. *Adams v. AE Door & Windows*, 2018 WL 1322240, at *2 (S.D. Ohio 2018) *quoting* C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1255 (3d ed. 2010).

9

ECF No. 46. Mazcon moves to dismiss each of those counterclaims. While the standard of review on a motion to dismiss a counterclaim remains the same as the review of a motion to dismiss a claim, this Court must examine the factual allegations in the counterclaims to determine if there are enough facts to state a claim to relief plausible on its face (*see Twombly*, 550 U.S. at 570) and all well-pleaded allegations must be taken as true (*see Erickson*, 551 U.S. at 93-94).

### A. Counterclaims I and III – Trademark Infringement

These counterclaims are based on trademark infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114, and the common law of Pennsylvania, respectively. Because many of the legal claims here arise under provisions of the Lanham Act, a short review of the Act's purpose is in order at the outset. The statute itself expresses its intent within its text:

> "The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; …"

15 U.S.C. § 1127. *See also POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 106 (2014) (explaining that "it requires no guesswork to ascertain Congress' intent regarding the [Lanham Act]" because "Congress included a detailed statement of the statute's purposes.") (citation and internal quotation marks omitted). So then, the "purpose of the Lanham Act is … to protect both the public and the providers of goods and services – i.e., owners of trademarks—from imitators seeking to capitalize on the owner's hard-earned goodwill." *Peccari v. GTLO Prods., LLC*, 115 F. Supp. 3d 509, 514 (E.D. Pa. 2015) *citing Aamco Transmissions, Inc. v. Smith*, 756 F. Supp. 225, 228 (E.D. Pa. 1991).

10

BEG and Greco allege that BEG owns the valid and legally protectable mark of THE BIG SWITCH; that BEG has not consented to Mazcon's use of the similar mark SWITCH SOCK; Mazcon's continued use of SWITCH SOCK has caused consumer confusion and will continue to do so; and Mazcon's actions constitute trademark infringement in violation of 15 U.S.C. § 1114 and common law trademark infringement. ECF No. 46, ¶ ¶ 319-325, 340-341. As relief for the alleged trademark infringement under the Lanham Act, BEG requests, *inter alia*, that this Court order the abandonment and cancelation of U.S. Serial Number 87/197,481 for SWITCH SOCK. *Id*. at ¶ 328.

In order to state a claim for trademark infringement under either federal or state law, a claimant must allege that "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the [opposing party's] use of the mark to identify goods or services causes a likelihood of confusion." *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc*., 237 F.3d 198, 210 (3d Cir. 2000).[5]

Here, BEG alleges that it holds and owns the valid and legally protectable mark of THE BIG SWITCH; that BEG has not consented to Mazcon's use of SWITCH SOCK; and Mazcon's continued use of SWITCH SOCK, without BEG's consent, has caused consumer confusion and will continue to do so. ECF No. 46, ¶ ¶ 319-325.

As the basis for its motion to dismiss, Mazcon argues that THE BIG SWITCH is not a valid mark because Mazcon's own SWITCH SOCK is a valid mark filed prior in time: the trademark application for SWITCH SOCK was filed on October 9, 2016, while BEG filed its

---

[5] These same elements apply to federal trademark infringement claims, as well as unfair competition claims under both the federal and the state law of Pennsylvania. *Maduka v. Tropical Naturals, Ltd*., 409 F. Supp. 3d 337, 352 (E.D. Pa. 2019) *citing A&H Sportwear*, 237 F.3d at 210.

trademark application for THE BIG SWITCH on March 7, 2017 (and for BIG SWITCH on March 8, 2018). ECF No. 56, pages 4-5.

Registration of a trademark creates "*prima facie* evidence of the mark's validity, the registrant's ownership of the mark, and its exclusive right to use the mark in commerce." *Lucent Info. Mgmt., Inc. v. Lucent Technologies, Inc.,* 186 F.3d 311, 315 (3d Cir. 1999) *citing* 15 U.S.C. § 1115(a). That said, this presumption is rebuttable and registration dates are not dispositive of the matter. *See Maduka v. Tropical Naturals, Ltd.,* 409 F. Supp. 3d 337, 355 (E.D. Pa. 2019) ("rights to a trademark are based on who was the first continuous user of the mark in United States commerce on or in connection with the goods or services specified in the registration. 15 U.S.C. § 1115(a).").

It is BEG's position that Mazcon's first-in-time mark for SWITCH SOCK is "merely descriptive" and, as such, should be canceled. In other words, if the mark of SWITCH SOCK is canceled based on its mere descriptiveness, the marks for THE BIG SWITCH and BIG SWITCH have priority. This argument is raised multiple times throughout the briefing and is beyond the scope of Rule 12(b) review in every regard.

Generally, a mark cannot be registered if "when used on or in connection with the goods of the applicant, the mark is merely descriptive of them." *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd*., 695 F.3d 1247, 1251 (Fed.Cir. 2012). A mark is merely descriptive if "'it consists merely of words descriptive of the qualities, ingredients or characteristics of' the goods or services related to the mark." *Id*., *quoting In re Oppedahl & Larson LLP*, 373 F.3d 1171, 1173 (Fed.Cir. 2004).[6]

---

[6] If a mark is descriptive, it may still achieve trademark protections, but "only with proof that the mark has achieved some 'secondary meaning.' A mark has secondary meaning when it is interpreted by the consuming public to be not only an identification of certain products or services, but also a representation of the origin of those products or services." *Maduka*, 409 F.

12

At this point in the proceedings, this Court cannot delve into the issue of whether the SWITCH SOCK mark is merely descriptive as such a level-of-distinctiveness determination is a question of fact that is beyond the Rule 12(b) level of review. *See In re Dial-A-Mattress Operating Corp.,* 240 F.3d 1341, 1344 (Fed.Cir. 2001) ("Placement of a term on the fanciful-suggestive-descriptive-generic continuum is a question of fact."); *Zurco, Inc. v. Sloan Valve Co.*, 785 F. Supp. 2d 476, 488 (W.D. Pa. 2011) ("categorization of a mark as generic, descriptive, or otherwise is usually a factual issue for the jury."); 2 McCarthy on Trademarks and Unfair Competition, § 12:12 n.3 (5th ed. 2017) *citing McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354 (Fed.Cir. 2007) (reversing dismissal of a Fed.R.Civ.P. 12(b)(6) motion where district court held the alleged mark to be a generic name).

For these reasons, the motion to dismiss counterclaims I and III will be denied.

### B. Counterclaim II – Unfair Competition

At this counterclaim, BEG and Greco allege unfair competition under § 43 of the Lanham Act, 15 U.S.C. § 1125 and common law[7] unfair competition.

To state a claim under § 43 of the Lanham Act, the claimant must allege that: "(1) opposing party made false or misleading statement as to its own products, or those of the claimant; (2) there was actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception was material in that it is likely to influence purchasing

---

Supp. 3d at 353 (internal citations omitted). Secondary meaning is also a question of fact. *See Good'N Natural v. Nature's Bounty, Inc.*, 1990 WL 127126, at *6 (D.N.J. 1990) *citing Scott Paper Co., v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1229 n.3 (3d Cir. 1978). The parties do not argue secondary meaning here.

[7] *See Giordano v. Claudio*, 714 F. Supp. 2d 508 (E.D. Pa. 2010) (acknowledging that Pennsylvania recognizes the common law tort of unfair competition).

decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the claimant in terms of declining sales, loss of good will, etc." *Nokia Corp. v. Interdigital Communications*, 2005 WL 3525696, at *5 (D.Del. 2005) *citing Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc*. 19 F.3d 125, 129 (3d Cir. 1994). The elements for a common law unfair competition claim are identical. See R.J. Ants, Inc. v. Marinelli Enterprises, LLC, 771 F. Supp. 2d 475, 489 (E.D. Pa. 2011).

Accepting as true the allegations of the counterclaim and drawing all reasonable inferences therefrom, this Court concludes that, at this juncture, BEG and Greco have stated unfair competition claims against Mazcon: BEG and Greco allege that Mazcon adopted a confusingly similar mark (SWITCH SOCK) in bad faith in order to capitalize on BEG's certifications and approvals of its products from government agencies. ECF No. 46, ¶ 330. Allegedly, Mazcon made statements to consumers that its goods were akin to BEG's Switch Family of products and made intentional false statements to mislead consumers by disparaging BEG's business and intellectual property rights. *Id*. at ¶ ¶ 329-339.

These allegations are sufficient to state a claim of unfair competition and the motion to dismiss will be denied in this regard.

### C.  Count IV - Cancellation of Federal Trademark

At Count IV, BEG seeks cancellation of Mazcon's federal registration Number 5,4454,382 for SWITCH SOCK because it is merely descriptive. BEG seeks to invoke this remedy pursuant to the Lanham Act, 15 U.S.C. § 1119.

Mazcon argues that BEG has failed to plead the factual basis for cancelation. This Court disagrees. The parties' arguments here, as elsewhere, focus on whether Mazcon's SWITCH

SOCK mark is merely descriptive and therefore unworthy of trademark protection. As discussed above, the determination of distinctiveness is a fact intensive matter inappropriate at this stage of the proceedings without discovery. *See Zurco*, 785 F. Supp. 2d at 488.

### D. Count V - False Advertising

Here, BEG alleges that Mazcon violated § 43 of the Lanham Act by engaging in false advertising through the use of its Product Sheets for SWITCH SOCK and ROAD WATTLE.

To state a false advertising claim under the Lanham Act, a claimant must allege: "(1) that the opposing party has made false or misleading statements as to his own product; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to the claimant in terms of declining sales, loss of good will, etc." *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc*., 653 F.3d 241, 248 (3d Cir. 2011) *citing Warner-Lambert v. Breathasure*, 204 F.3d 87, 91-92 (3d Cir. 2000). *See also Parks LLC v. Tyson Foods, Inc.,* 863 F.3d 220 (3d Cir. 2017.)

BEG alleges that through Mazcon's use of Product Sheets in interstate commerce, Mazcon has engaged in false advertising. Allegedly Mazcon used three Product Sheets advertising its products SWITCH SOCK and ROAD WATTLE. At the bottom of each of these Product Sheets, the mark "Patent Pending 15/449,576" appears. Because the patent number identified is unrelated to either SWITCH SOCK or ROAD WATTLE, the Product Sheets are literally false. The false information in the Product Sheets tends to deceive a substantial segment

of the purchasing audience. Finally, BEG alleges that has suffered reduced sales and has provided a specific example to support that. ECF No. 46, ¶¶ 348-357.

Despite Mazcon's arguments to the contrary, these factual allegations are sufficient to state a claim of false advertising. Mazcon argues that BEG's allegation is factually wrong because BEG is confusing a patent application number with an actual patent number. That factual determination is beyond the scope of Rule 12 review. *See Burtch*, 662 F.3d at 221 ("[W]here there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.").

The motion to dismiss will be denied in this regard.

### E. Count VI – False Marking

BEG alleges that Mazcon has engaged in false marking in violation of 35 U.S.C. § 292, again based on the use of the Product Sheets.

Section 292 of the Patent Act provides:

> Whoever, with the consent of the patentee, marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing the same is patented for the purpose of deceiving the public … [s]hall be fined not more than $500 for every such offense.

35 U.S.C. § 292(a). To state a claim for false marking, the claimant must allege: (1) the opposing party marked an unpatented article (2) with the intent to deceive the public. *Brinkmeier v. Graco Children's Products Inc.,* 767 F. Supp. 2d 488, 494 (D.Del. 2011) *citing Forest Group, Inc. v. Bon Tool Co.,* 590 F.3d 1295, 1300 (Fed.Cir. 2009).

BEG has only pled that Mazcon intentionally caused its Product Sheets to show a patent pending number when it knew that no such patent existed. ECF No. 46, ¶ 361. Because BEG has

16

failed to plead any facts to support Mazcon's intent to deceive the public, Mazcon's motion to dismiss will be granted as to Counterclaim VI and the false marking claim will be dismissed.

An appropriate order follows.